UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| EDUCATIONAL CREDIT MANAGEMENT CORPORATION,<br><br>　　　　　Appellant,<br><br>　vs.<br><br>SUZANNE AVELLANO,<br><br>　　　　　Respondent. | Case No: C 09-3183 SBA<br><br>**ORDER AFFIRMING DECISION OF BANKRUPTCY COURT**<br><br>Docket No. 9 |

Appellant Educational Credit Management Corporation ("ECMC") appeals from a judgment in favor of Respondent Suzanne Avellano ("Avellano") by the bankruptcy court discharging her outstanding student loan debt under 11 U.S.C. § 523(a)(8). Having read and considered the papers filed in connection with this matter, and being fully informed, the Court hereby AFFIRMS the decision of the bankruptcy court. The Court resolves this matter based on the papers submitted, pursuant to Federal Rule of Civil Procedure 78(b).

I.   **BACKGROUND**

　　A.   **EDUCATION AND EMPLOYMENT HISTORY**

Avellano, a 57 year-old woman, previously attended the University of California, Santa Barbara ("UCSB"). Resp't Br. ("RB") at 4. At UCSB, she attained a bachelor's degree in 1980, a Master of Fine Arts degree in 1982, a Master's degree in Iberian and Latin American Studies in 1984, and subsequently passed the qualifying exams for her Ph.D. in 1987. Id. However, Avellano's academic career later stalled after she filed a sexual harassment complaint against her dissertation advisor, leading to the termination of her Ph.D candicacy. Id. Although she pursued her studies through 1995, she never obtained a doctoral degree. Id.

Avellano had taken out student loans to fund her undergraduate and graduate education. In 1993, she defaulted on her student loans. Id. at 5. Thereafter, UCSB refused to release her transcripts to any potential employers because of her default. Id. Because of her inability to provide documentation of her two Master's degrees, Avellano was unable to obtain a work in her field of expertise. Id. at 7. As a result, since 1995, Avellano largely performed clerical work, with the exception of one job with Dominican College. RB at 7. However, Avellano was unable to qualify for a permanent position there due to her inability to obtain her transcripts from UCSB. Excerpts of Record ("ER"), Tab 33 at 2. Avellano was laid off her most recent clerical job in February 2008. RB at 7-8. Her average yearly adjusted gross income over the last five years is $45,025. ER, Tab 33 at 3.

**B.  CHAPTER 13 FILING AND DISCHARGE**

While Avellano was employed, she attempted to reach payment arrangement with respect to her student loans; however, her creditors required payments in excess of what Avellano's income allowed her to pay. RB at 8. In 2001, after working overtime in a clerical job, Avellano finally earned enough to qualify for chapter 13, and thereafter filed a chapter 13 petition on April 1, 2001.[1] Id. She completed her five year payment plan in 2006. Id. Both ECMC and UCSB had notice of the chapter 13 filing. Id.

On August 8, 2006, after Avellano completed her chapter 13 plan, the bankruptcy court entered an Order Discharging Debtor After Completion of Chapter 13 Plan ("chapter 13 Order"), which discharged Avellano from "all debts provided for by the plan or disallowed under 11 U.S.C. § 502," except any debt "for a student loan." Appellant's Opening Br. ("AOB") at 6:13-14.[2] Avellano testified that both before and after the chapter 13 case, she offered to make payments that were the maximum she could afford to pay, but were less than

---

[1] Chapter 13 permits individual debtors to develop a plan to repay all or a portion of their debts over a period of time specified in the plan. See Nobelman v. American Savings Bank, 508 U.S. 324, 327 (1993). A proposed bankruptcy plan becomes effective upon confirmation, and will result in a discharge of the debts listed in the plan if the debtor completes the payments the plan requires, pursuant to 11 U.S.C. § 1328(a).

[2] The parties have stipulated that Avellano voluntarily paid $815 in 1996, and $7,558 from 2001 to 2006 through her five-year chapter 13 plan. ER, Tab 33 at 3-4.

the scheduled amount. Id. at 4. However, ECMC refused to accept those partial payments. Id. at 4.

### C. ADVERSARY ACTION AGAINST ECMC

On September 7, 2006, Avellano filed a Complaint to Determine the Dischargeability of Student Loan Debt, for Temporary Restraining Order, and Preliminary and Permanent Injunction ("Complaint") against ECMC and others, in bankruptcy court. ER, Tab 1. On September 17, 2008, Avellano filed a First Amended Complaint in a second adversary proceeding against UCSB. ER, Tab 4. The bankruptcy court consolidated the two adversary proceedings for trial by Order, dated November 20, 2008. ER, Tab 6.

In February 2009, Avellano settled with UCSB. Id. As part of the settlement, Avellano released all claims against the University and agreed that she would not further pursue her Ph.D. at the University; in turn, the University agreed to release her transcripts, as well as forgive any loans she owed to the University. ER, Tab 33 at 3. Though Avellano was given access to her academic records, she remained unable to obtain her Ph.D. due to insufficient financial resources to start anew at a different university. Id. In addition, despite that settlement, Avellano continued to owe $126,053.26 in student loans. Of that amount, only $20,745 represents the principal borrowed in connection with her Ph.D. work, with the balance attributable to interest and fees charged by ECMC and its predecessors. RB at 9.[3]

On April 7, 2009, Bankruptcy Judge Thomas E. Carlson presided over a one day trial on Avellano's adversary Complaint against ECMC. AOB at 2. On June 17, 2009, Judge Carlson issued a Memorandum Decision and Judgment ("the 2009 Judgment") in favor of Avellano, in which he discharged the student loan held by ECMC in its entirety. ER, Tab 33. ECMC now appeals that ruling.

---

[3] Avellano has already paid $9,833.09 for the $8,000 she borrowed for her Bachelor's and Master's Degrees.

## II. LEGAL STANDARD

A district court has jurisdiction to hear appeals from a bankruptcy court.  28 U.S.C. § 158(a).  This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo.  Educ. Credit Mgmt. Corp v. Coleman (In re Coleman), 560 F.3d 1000, 1003 (9th Cir. 2009).  The bankruptcy court's findings of fact must be accepted unless this Court is "left with the definite and firm conviction that a mistake has been committed."  In re Jan Weilert RV, Inc., 315 F.3d 1192, 1196 (9th Cir. 2003).  The district court reviews de novo the bankruptcy court's application of the legal standard in determining whether a student loan debt is dischargeable as an undue hardship.  Rifino v. United States (In re Rifino), 245 F.3d 1083, 1087 (9th Cir. 2001) (citing United Student Aid Funds, Inc. v. Taylor (In re Taylor), 223 B.R. 747, 750 (9th Cir. BAP 1998)).

"Permitting a bankruptcy judge to decide whether 'undue hardship' has been made out on the basis of all the pertinent circumstances does not mean that the bar has to be set low."  Nash v. Connecticut Student Loan Foundation, 330 B.R. 323, 326 (D. Mass. 2005).  In fact, there is "clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt."  Brunner v. New York State Higher Educ. Services Corp., 831 F.2d 395, 396 (2nd Cir. 1987).  "A determination of whether a student loan debt falls under the hardship provision of §523(a)(8) for discharge is discretionary with the Bankruptcy Judge."  In re Lohman, 79 B.R. 576, 580 (Bkrtcy.D.Vt., 1987).  "A judge exercising flexible discretion to take into account the full and peculiar facts of a given case without the aid of a prescriptive (and perhaps restrictive) 'test' can still be faithful to that congressional purpose."  Nash, 330 B.R. at 326.

## III. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

ECMC contends, as a threshold matter, that the bankruptcy court exceeded its subject matter jurisdiction when it entered the 2009 Judgment, which discharged the remainder of Avellano's student loan.  Specifically, ECMC asserts—for the first time on appeal—that the 2006 chapter 13 order was a final judgment which could be attacked only through Federal Rule

of Civil Procedure 59 or 60, and that the time for seeking relief under those rules has passed. This contention lacks merit. Notwithstanding the entry of a prior discharge order (i.e., the 2006 chapter 13 order), the bankruptcy court retains "on-going authority . . . to adjudicate student loan dischargeability actions after a discharge order is entered." In re Walker, -- B.R. --, 2010 WL 1407769 at *5-6 (8th Cir. BAP, April 9, 2010) (rejecting ECMC's contention that the bankruptcy court's earlier discharge order precluded the court from later discharging a student loan debt based on undue hardship under 11 U.S.C. § 523(a)(8)). Thus, the Court finds no merit to ECMC contention that the bankruptcy court had no power to consider Avellano's adversary complaint under section 523(a)(8). The Court now turns to ECMC's substantive challenge to the bankruptcy court's ruling.

### B. DISCHARGE OF STUDENT LOAN DEBT UNDER 11 U.S.C. § 523(a)(8)

Loan obligations made for educational purposes are not dischargeable "unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). There is a three-part test for a bankruptcy discharge of a student loan. The debtor must demonstrate: (1) that he or she cannot maintain, based on current income and expenses, a "minimal" standard of living for himself or herself if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good-faith efforts to repay the loans. United Student Aid Funds, Inc. v. Pena, 155 F.3d 1108, 1111 (9th Cir. 1998) (citing In re Brunner, 831 F.2d 395, 396 (2d. Cir. 1987)). Each prong must be met in order for a student loan to be discharged. In re Rifino, 245 F.3d at 1087-88. "The determination of undue hardship, by nature, is case and fact-specific." Bolen v. Sallie Mae Servicing Corp., 2003 WL 22327201, at *2 (D. Vt. 2003); In re Maulin, 190 B.R. 153, 156 (Bkrtcy.W.D.N.Y. 1995). ECMC asserts that Avellano did not meet either the second or third prongs of the "undue hardship" test.

#### 1. Additional Circumstances

ECMC contends that the bankruptcy court erred when it found that Avellano met the second prong of the "undue hardship" test, i.e., that additional circumstances exist indicating

her inability to repay the loan will likely to persist for a significant portion of the repayment period of the student loans. AOB at 9. "[T]he burden is on the debtor to provide the court with additional circumstances, i.e., circumstances beyond the mere current inability to pay, that show that the inability to pay is likely to persist for a significant portion of the repayment period." In re Nys, 446 F.3d 938, 946 (9th Cir. 2006) (quotations omitted). The factors a court may consider include, but are not limited to: (1) serious mental or physical disability of the debtor which prevents employment or advancement; (2) obligations to care for dependents; (3) lack of or severely limited education; (4) poor quality of education; (5) lack of usable or marketable job skills; (6) underemployment; (7) maximized income potential in the chosen educational field; (8) limited number of years left in the debtor's work life to allow repayment of the loans; (9) age or other factors that prevent retraining or relocation; (10) lack of assets, exempt or not; (11) potentially increasing expenses that outweigh any potential appreciation in the value of the debtor's assets or increases in the debtor's income; and (12) lack of other better financial options elsewhere. Id. at 947.

In reviewing the bankruptcy judge's findings, the Court finds that the bankruptcy judge properly analyzed and weighed numerous additional factors as an indicator that Avellano's financial condition would not improve. The bankruptcy court found: (1) that Avellano lacks usable or marketable job skills because, although she is intelligent and well-educated, her training in art and Latin American history would be most likely be limited to use in a college setting; (2) that Avellano's age (then 57) prevents retraining and relocation because an employer would probably find that she only has a limited number of working years to recover the costs of training someone like her position; and (3) that Avellano's underemployment record indicates it is unlikely that she will be able to find a job enabling her to earn income above her thirteen-year historical average. ER, Tab 33 at 6-7. All of these conclusions are properly supported in the record, and the Court finds no error in the bankruptcy court's balancing of these "additional circumstances" to show that Avellano's current financial condition will persist in the future. See In re Nys, 446 F.3d at 947 ("Bankruptcy courts may look to the *unexhaustive* list of "additional circumstances") (emphasis added).

ECMC argues that "Avellano did not establish that insurmountable barriers stood in the way of her financial recovery or that she had an impervious financial situation."  AOB at 10.  ECMC claims that Avellano removed "the primary hurdle to her financial recovery on the eve of trial" as a result of her recent settlement with UCSB, which allows Avellano to now prove to potential employers that she went to college and graduate school.  Id.  This contention lacks merit.  As an initial matter, ECMC inappropriately focuses on a single factor when, in fact, the multiple factors are germane.  Moreover, ECMC provides no support for the supposition that Avellano's access to her transcripts constitutes a panacea to the impediments she faced in terms of repaying her student loan.  For instance, despite the release of her transcripts, Avellano remained financially unable to complete her degree elsewhere.  As such, Avellano would not qualify for a tenure-track teaching position at a university due to her lack of a Ph.D.

ECMC also fails to take into account that, given the current status of the economy, it is unlikely that Avellano will be able to quickly find a position that would enable her to repay her loans, particularly since she has been unemployed for almost two years.  In addition, the Court finds no error in the bankruptcy court's finding that Avellano's age renders her less employable.  ECMC's claim that there is "no basis in law" to assume Avellano would be discriminated against because of her age misses the point.  AOB at 13:11-13.  The bankruptcy court merely made the realistic observation that it is unlikely that many schools would readily hire a new instructor given her age and lack of experience as well as the limited number of working years remaining.

Equally without merit is ECMC's assertion that the bankruptcy court "inappropriately factored in the prohibitive cost of completing Avellano's Ph.D. into its determination."  AOB at 12.  As above, ECMC attempts to improperly isolate and focus on a single factor, instead of considering the circumstances in their totality.  Although evaluating the cost of completing a Ph.D. program may not, standing alone, necessarily support the conclusion that that a debtor's state of affairs is likely to persist for a significant portion of the repayment period, ECMC ignores that the bankruptcy court considered the cost of completing her doctorate among a number of other factors, including Avellano's inability to obtain employment for the last two

years, in arriving at its ruling.  In sum, the Court finds that the bankruptcy court did not err in finding that there are additional circumstances to indicate that Avellano's current state of affairs is likely to persist for a significant portion of the repayment period of her student loans.

### 2. **Good-Faith Effort to Repay Loans**

Finally, ECMC challenges the bankruptcy court's determination regarding Avellano's good faith efforts to repay her loan. "Good faith is measured by the debtor's efforts to obtain employment, maximize income, and minimize expenses." Educational Credit Mgmt Corp. v. Mason (In re Mason), 464 F.3d 878, 884 (9th Cir. 2006) (citation omitted).  Courts will also consider a "debtor's effort–or lack thereof–to negotiate a repayment plan, although a history of making or not making payments is, by itself, not dispositive." In re Mason, 464 F.3d at 884 (quotation marks and citations omitted).

In reviewing the bankruptcy judge's findings, the Court finds that in considering a good-faith effort, the bankruptcy judge properly considered Avellano's efforts to obtain employment, maximize income, and minimize expenses.  Specifically, the bankruptcy judge considered the fact that Avellano:  (1) worked diligently from 1996; (2) lived frugally, expending only her basic, necessary living expenses, (3) made voluntary payments to ECMC in 1996 and paid one hundred percent of her disposable income towards debt repayment between 2001 and 2006, pursuant to her chapter 13 plan; and (4) tendered partial payments to ECMC prior to and after the completion of the chapter 13 plan.  ER, tab 33 at 7-8.  These findings are documented in the record.

ECMC contends that "[w]hile some of Avellano's chapter 13 payments did go to ECMC, there is no case law to the effect that payments made pursuant to Bankruptcy Code requirements constitute a 'good faith effort to repay.'" AOB at 14.  ECMC also claims that there is "no case law that tendering less than the contractual amount due exhibits good faith." Id.  In addition, ECMC seems to imply that Avellano did not make a good faith effort to repay ECMC's debt because she "made no payments after she completed her chapter 13 plan." Id.  These contentions lack merit.

The bankruptcy court did not rely on these considerations in isolation in determining that Avellano had made a good-faith effort to repay her loanS.  Instead, the court looked to numerous factors, as discussed above, such as Avellano's efforts to obtain employment and her efforts to maximize income while minimizing her expenses.  In addition, for a period of five years, Avellano diligently made her monthly payments and eventually completed her chapter 13 plan; thereafter, the bankruptcy court entered its order which discharged Avellano from "all debts provided for by the plan." AOB at 6.  Though Avellano did not make any payments to ECMC after completing her chapter 13 plan, ECMC ignores that it refused to accept the amount that Avellano proposed to tender.  After the chapter 13 plan was completed, Avellano was able to make $200 per month payments, which is what she could then afford.  RB at 20.  However, ECMC refused to accept any payments below $1,000, which was beyond what Avellano was able to pay.  Avellano's offer to make payments, based upon what she could afford, demonstrates a good-faith effort to repay her loan.  Therefore, the Court finds that the bankruptcy court did not err in finding that Avellano has made good-faith efforts to repay her loan balance.

## IV.  CONCLUSION

For the reasons stated above,

IT IS HEREBY ORDERED THAT the order of the bankruptcy court is AFFIRMED.  The Clerk shall close the file and terminate any pending matters.

IT IS SO ORDERED.

Dated: March 31, 2010

*Saundra B. Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

IN RE SUZANNE AVELLANO,

        Plaintiff,

  v.

IN RE SUZANNE AVELLANO et al,

        Defendant.
_____/

Case Number: CV09-03183 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on April 13, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

United States Bankruptcy Court Northern District of California
USBC-San Francisco
for the Northern Dist. of CA
235 Pine St
P.O. Box 7341
San Francisco, CA 94104


Thomas E. Carlson
USBC-San Francisco
for the Northern Dist. of CA
235 Pine St
P.O. Box 7341
San Francisco, CA 94104

Dated: April 13, 2010

                                    Richard W. Wieking, Clerk

                                            By: LISA R CLARK, Deputy Clerk